ARTEMAS SPAULDING *v.* LUDLOW WOOLEN MILL.

*Deposition.    Notice.    Partnership.    Evidence.    Estoppel.    Lim-itations.*

. In reference to the notice required to be given to the adverse party, *in* taking a deposition, under the statute, (Acts of 1854, No. 4, G. S. p. 324, § 6,) *it is held,* that in case of a number of plaintiffs or defendants, notice to one plaint ff or defendant, who is a real party, or apparently such, is *prima facie* sufficient; leaving it for the court to decide whether the party, giving the notice, acted in good faith in selecting the one to be notified, and whether the relations of the parties are such that the notice affords a reasonable pro-tection to the interests of all.

In a suit against a partnership, where one of the partners had previously withdrawn, under an agreement with the other partners to keep the fact of his retirement a secret, the plaintiff had a right to regard him as a real party for the purposes of notice.

The question of Day's liability upon the plaintiff's account, is held, under the circumstances of this case as detailed in the statement, to be one of fact.

The taking of an individual note of one member of a firm on account of a co-partnership debt and receipting therefor, under an agreement that the partnership should be liable for the goods for which the note was given if the note was not paid, was no satisfaction of the claim against the firm.

A debt may become barred by the statute of limitations as to one member of a partnership in the state and not as to those out of the state.

BOOK ACCOUNT.    Judgment to account was rendered, and an auditor was appointed, who reported the facts as follows :

Previous to 1848, a company, formed for the purpose of man-

ufacturing woolens, and doing business under the name of the
" Ludlow Woolen Mill," consisted of Abraham Adams, Albert
Day and Shepherd Adams.   On the 11th day of January, 1848,
Day conveyed his interest in the company to Shepherd Adams
by deed.   This deed was not recorded, nor was it left for record
at the town clerk's office until the 13th day of February, 1851.
No notice of Day's retirement from the firm was made to the
public, and it was agreed between the three partners that the
fact of Day's retirement should be kept a secret; and the com-
pany always retained the same name down to the time of its fail-
ure, February 12th, 1851.

The defendant Day resided in Massachusetts from the time he
was first connected with this company until after the commence-
ment of this suit, but all this time, was occasionally at Ludlow
and at the factory; and the plaintiff had dealings with the com-
pany while Day was a partner.

It appeared that the plaintiff sold a quantity of wool to this
company and took Shepard Adams' individual note in payment
and gave a receipt therefor; that the negotiation was made with
Sheperd Adams; that in June, 1845, this Adams had been
appointed general agent for the company, to attend to the out-
door affairs of the company, such as buying wool and other arti-
cles for the company, and so continued to act until the company
failed; that during the negotiation and at the time the sale was
consummated he, Adams, spoke of " the Ludlow Woolen Mill "
company, and upon inquiry by the plaintiff, told him the company
had not been changed lately.   He did not name the members, but
told the plaintiff the town records would show who the members
were, and consequently, and before completing the sale, the
plaintiff went and examined the records and found no record of
any conveyance by Day and thereupon and by reason of the rep-
resentations of Shepherd Adams, the plaintiff came to the con-
clusion that Day was still a partner of the company, though he
had heard some rumors about Day's selling out, which he did not
credit, and the plaintiff intended to, and supposed he did sell the
wool to the company, consisting, as he believed, of the defend-

ants in this suit, and he expected to have a company note for it, and the wool was delivered by the plaintiff at the factory, and some of the factory hands assisted the plaintiff in weighing it.

It further appeared that a few days after the sale was completed and the wool delivered, and on or about the 3d day of September, 1849, the plaintiff was passing the store then occupied by Shepherd Adams, and he requested the plaintiff to call in, which the plaintiff did, and Adams produced a note, which he had already written and signed with his individual signature, for the amount the wool came to, and payable on demand, and offered the plaintiff this note in payment for the wool. The plaintiff said he would not take this note and that it was the understanding that he was to have a company note. To which Adams replied, that if the plaintiff would take this note, if he was likely to fail he would give him a company note, and to this the plaintiff replied that he would not take his, Adams', note in any such way, and in answer to this Adams said that "they would not cheat him out of his pay, that he would be sure of his pay," and thereupon the plaintiff said "he would take this note and if he (Adams) paid it, all well, if not he (the plaintiff) would hold the company—he would not give up his security," whereupon Adams said, "he might take the note so, they would not cheat him out of his pay any way," and the plaintiff then took the note.

On the trial the depositions of Albert Day, the defendant, and one George S. Coffin, a former partner in this company, were offered in evidence by the plaintiff and objected to by the defendant, for the alleged reason that no notice of taking the same was given, except to Day, who was only a nominal party to the suit; and in reference to this it appeared that Day was the only party notified of the taking, and that this account wholly accrued after Day withdrew from the firm.

The depositions were received and read, and the defendants excepted.

The defendants offered in evidence the minutes of the testimony of Sewall Fullam, Esq., given in an arbitration between

Artemas Spaulding and George S. Coffin five or six years previously, tending to show how the parties to this suit regarded Shepherd Adams' note, in which suit Fullam was counsel for Spaulding. The evidence offered was excluded, and the defendants excepted. Fullam was present and acting as attorney for the plaintiff when this evidence was offered and excluded.

The writ in this action is dated the 20th day of July, 1858, and was served the 22nd following. The plaintiff was one of the listers of Ludlow for the three years 1847–8–9, and the entries of the factory property during these three years were in his hand writing. The plaintiff had never collected anything on the note of Shepherd Adams, nor attempted it until the present suit was brought.

It appeared that Adams treated the wool as his own property, and finally sold it to this company, and charged it on book to them with other lots of wool. It did not appear that other members of the firm had any knowledge of the plaintiff's claim on the company for this wool, until about the time of the commencement of this suit.

Day did not appear personally as a party to the suit at the hearing before the auditor ; nor did it appear that he took any interest in the suit.

It was agreed by the counsel that the objection to the minutes of the testimony of Mr. Fullam, given before the arbitration, was that the testimony thus given was not admissible in evidence before the auditor, and not that the minutes did not show correctly the testimony given by Fullam.

The auditor allowed the item for the wool with interest, amounting in all to $821.59.

The court, at the December Term, 1862, BARRETT, J., presiding, rendered judgment for the defendant, Abraham Adams, to recover his costs,—to which the plaintiff excepted ; and *pro forma* for the plaintiff against Shepherd Adams and Albert Day for the sum found due by the auditor and his costs,—to which the defendants, S. Adams and Day excepted.

11

*J. F. Deane, F. C. Robbins* and *A. Tracy,* for the defendants, claimed that the depositions of Day and Coffin were improperly received, and that the testimony of attorney Fullam was improperly rejected.    1 Green. Ev. 218, § 168 ; 1 Phillips' Ev. 523 and 524.    That the plaintiff is estopped from denying payment for the wool.    *Holmes* v. *Burton et al.,* 9 Vt. 252 ; *Stevens* v. *Thompson et al.,* 28 Vt. 77 ; *Pratt* v. *Page et al.,* 32 Vt. 13.    All claim against Abraham Adams is barred by the statute of limitations.

*S. Fullam,* for the plaintiff, insisted that the court below erred in rendering judgment for A. Adams, on account of the running of the statute of limitations.    It is agreed that Day never lived in this state, and that S. Adams removed therefrom in 1854, and that A. Adams has lived in the state since the indebtedness accrued.    The plaintiff could make no effectual service on the defendants until he could reach Day.    The depositions were admissible ; the notice was sufficient under the statute of 1854, p. 4, and the practice has been uniform under it.    The testimony from the minutes was clearly inadmissible.    *Hovey* v. *Hovey,* 9 Mass. 207 ; *Martin* v. *Root,* 17 *ib.* 222.

PECK, J.    1.    It is insisted on the part of the defendant that the auditor erred in admitting the deposition of the defendant Day, and the deposition of Coffin.    It appears by the certificate or caption that the adverse party was notified and did attend.    The objection is that the plaintiff gave notice only to the defendant Day, and so the auditor finds the fact.    It is claimed that the word *party* in the statute on this subject includes all the persons that represent one side of the case on the record, and that notice must be given to each.    It is insisted that otherwise notice may be given to one of several plaintiffs or defendants who is a mere nominal party, or who from his poverty or for other reason takes no interest in the suit, and thereby the others may be prejudiced. On the other side it is urged that the requirement of the statute is satisfied by notice to any one of several plaintiffs or defendants,

and that the strict construction contended for by the defendants' counsel will lead to embarrassment and delay, and often to the loss of testimony in case of many plaintiffs or defendants residing in various and remote parts of the state. There is force in the arguments on both sides, and we have endeavored to give them the consideration they deserve. We must give such construction to the statute as the language will bear, and at the same time such as will best carry out its spirit and intent in accomplishing the purpose in view. If we apply the rule applicable to original writs by which the court obtains jurisdiction of parties, it is clear that the defendants' construction is right. On the other hand if we apply the rule applicable to business transactions where notice to one of several partners, joint contractors or persons having a joint, and common interest, is notice to all, then the plaintiff's construction is right, as *prima facie* the defendants must be regarded as having a common interest. The language of the statute will bear either construction, but we do not say that either would be applicable to all cases. We think the rule best calculated to accomplish the object of the statute, and guard against the danger of injustice on the one side, and inconvenience and embarrassment on the other, is this : in case of a number of plaintiffs or defendants, notice to one plaintiff or defendant who is a real party or apparently such, is *prima facie* sufficient ; leaving it to the court to decide whether the party giving the notice acted in good faith in selecting the one to be notified, and whether the relations of the parties are such that the notice affords a reasonable protection to the interests of all. As Day had been a partner and withdrawn from the firm under an agreement to keep the fact of his retirement secret, the plaintiff had a right to regard him as a real party for the purposes of notice, especially as the depositions in question relate solely to facts affecting his liability, and as Day appeared and cross-examined the witness Coffin in a manner clearly showing that he was not acting in concert with the plaintiff, but faithfully represented the defendants. This exception must be overruled.

2. The next exception by the defendant is to the decision of

the auditor in excluding proof of what Fullam testified in 1856 in an arbitration between the plaintiff and George S. Coffin. The only ground upon which it could be claimed to be admissible is that it might tend to show what the plaintiff claimed on that trial.  If the plaintiff claimed and attempted to prove on that trial facts inconsistent with his claim in this case, it might be competent to show it on this trial.  But we do not see that Fullam's testimony on that hearing is inconsistent at all with what the plaintiff now claims.  It neither tends to show that the plaintiff did not sell the wool on the credit of all the defendants, nor that he received the note in payment or discharge of his account.

3.  Another question is whether upon the facts found by the auditor, Day was even liable upon this account.  Day sold his interest in the co-partnership to Shepherd Adams, February 11, 1848, under an agreement to keep it secret, and at the same time conveyed to him his interest in the real estate.  The deed was not recorded or left for record till February 13, 1851.  In the mean time up to February 12, 1851, when the firm failed, the business was carried on under the same co-partnership name as before.  The auditor finds that the credit was given to the defendants by the plaintiff supposing Day was still a member of the firm, and finds that the plaintiff had had previous dealings with the firm while Day was a partner.  It is insisted that the entry on the grand list of the property of this firm in 1847, 1848, and 1849, is conclusive evidence of notice to the plaintiff that Day was not a partner.  But we think in connection with what the plaintiff was told by Shepherd Adams in the course of the negotiation, the examination of the town records by the plaintiff and other circumstances detailed in the report, that it was a question of fact to be found from the whole evidence, and we can not revise the finding of the auditor.  The defendants' counsel refer to Pratt v. Page et al., 32 Vt. 13, on this point.  This report finds substantially all that the court hold in that case to be necessary to hold an out-going partner.

4.  It is next insisted that the taking of Shepherd Adams' note and the execution of the receipt a few days after the sale

and delivery of the wool, is a satisfaction of the claim against the co-partnership. In support of this the defendants' counsel cite, *Stevens* v. *Thompson & Franklin*, 28 Vt. 77. The most that can be claimed as decided in that case is, that the taking of the note of one member of the firm on account of a co-partnership debt, and receipting the account, is *prima facie* a satisfaction of the debt against the firm, and thus the burden is on the creditor to show affirmatively that there was an agreement or understanding to the contrary. In the case at bar it appears that it was expressly agreed that the note and receipt should not be a payment or satisfaction, but that the co-partnership should still remain liable. In *Holmes* v. *Burton et al.*, 9 Vt. 252, to which we are referred, the credit was given to one member of the firm only, and his note taken at the time, which distinguishes that case from this. But it is claimed that as Shepherd Adams treated the wool as his own and sold it with other wool to the firm and charged it to them, and as the other members of the firm had no knowledge of the plaintiffs' claim on them for the wool till about the time of the commencement of the suit, the plaintiff is estopped by his receipt and the acceptance of the note from asserting any claim on the co-partnership. The auditor's report does not show whether the firm have ever paid Shepherd Adams for the wool, or how the accounts stand as between the different members of the firm. If the plaintiff knew when he took the note and gave the receipt that the object of Shepherd Adams was to deceive or defraud his co-partners, and they had been thus misled to their injury, the plaintiff would be estopped. The auditor has not found this, and we are not at liberty to infer it. The plaintiff might have supposed that Shepherd Adams would communicate truly the facts to his co-partners as it was his duty to do. The facts found do not amount to an estoppel.

5. The county court held the plaintiff's claim barred by the statute of limitations as against Abraham Adams, and rendered judgment against the other two defendants. For aught that appears in the report it would seem that the debt is also barred by the statute as to Shepherd Adams; but the omission in the

report is supplied by a stipulation of counsel handed to the court since the argument, from which, in connection with the facts in the report, it appears that the residence of Day and Shepherd Adams out of the state saves the claim as against them from the operation of the statute. The defendants' exceptions can not prevail.

6. The plaintiff claims that the county court erred in holding the claim barred by the statute of limitations as against Abraham Adams. This is urged upon the ground that as the absence of the other two defendants prevented the plaintiff from prosecuting his claim against the defendants jointly and obtaining a judgment against all the joint contractors, the operation of the statute was saved as to all. But this is not the true construction of the statute. It is only the absent defendants that are excepted from the operation of the statute, and as to the defendant who resided in the state the statute operates the same as if he were the sole debtor.

The judgment of the county court is affirmed.